# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED

AUG 19 2019

DOUGLAS E. WEDGE
CLERK, U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA
BY:_____ DEPUTY

ALEXANDER LOUIS BEDNAR                    )
(Debtor)                                  )          19−12845 − JDL

                                          )
                                          )
ALBERTA ROSE JOSEPHINE JONES              )
(Alleged Creditor)                        )

## ALBERTA ROSE JOSEPHINE JONES' MOTION
## TO BE EXCLUDED AS A CREDITOR
## UNDER U.S.C. § 1328(f)

### MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT THEREOF

Alberta Rose Josephine Jones (JONES) has been identified by Debtor Alexander Louis Bednar (BEDNAR) as a "creditor."

JONES is claiming she is not a "creditor" under U.S.C. § 1328(f) and wishes to be excluded from this action filed by BEDNAR on or about July 11, 2019.

### MEMORANDUM OF POINTS AND AUTHORITIES

BEDNAR filed the following complaint in the United States District Court for the Western District of Oklahoma CIV 2019-279- D on March 25, 2019. (Exhibit (1))

JONES filed the following motion to intervene on August 11, 2019 in said referenced case. (Exhibit (2))

JONES respectfully requests to be excluded from these bankruptcy proceedings as a creditor based on "fraud" under U.S.C. § 1328(f),  11 U.S. Code § 522 and Exemptions and 18 U.S. Code § 1962.Prohibited activities.

U.S.C. § 1328

(d)  Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

(e)  On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—

(1) such discharge was obtained by the debtor through fraud; and

(2) the requesting party did not know of such fraud until after such discharge was granted.

## 11 U.S. Code § 522

**(B)** the debtor owes a debt arising from—

**(i)**

any violation of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws;

**(ii)**

fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933;

**(iii)**

any civil remedy under section 1964 of title 18; or

**(iv)**

any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.

## 18 U.S. Code § 1962.Prohibited activities

**(a)**

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)**

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)**

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d)

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

(Added Pub. L. 91–452, title IX, § 901(a), Oct. 15, 1970, 84 Stat. 942; amended Pub. L. 100–690, title VII, § 7033, Nov. 18, 1988, 102 Stat. 4398.

## CONCLUSION

JONES is claiming that the funds BEDNAR received from JONES to represent her disabled son, Ryan Garrett Jones (mainly) and herself were received based on fraud.

BEDNAR never placed said funds in a  "CLIENT" "trust" account based on the "legal pleadings" filed by BEDNAR and/or his attorney, Stephen A. Harry.

BEDNAR and his attorney, HARRY, are trying to force said JONES to accept these proceedings so that she may not "sue" BEDNAR for the "recovery" of her "money" which exceeds $17,000.00 and damages.
'

If the court allows BEDNAR to claim her money which should have been placed in a "trust" account to be simply claimed as a "debt",  then the "court" is violating said JONES' rights to recover these funds fraudulently obtained by BEDNAR.

Respectfully Submitted,

Albert Rose Josephine Jones
PO Box 2175
Stillwater, Oklahoma 74064
9hockeymom@gmail.com
405-780-3214

# EXHIBIT (1)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALEXANDER BEDNAR, individually | ) |
| | ) CIV- 2019- 279 - D |
| vs | ) |
| | ) |
| PAUL HESSE, et. al. | ) |

## ALBERTA ROSE JOSEPHINE JONES' MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24 (a) AND MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT THEREOF

### STATEMENT OF PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS FOR MOTION

Pursuant to Federal Rule of Civil Procedure 24(a), Alberta Rose Josephine Jones moves the Court to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) to protect her asserted rights with respect to the central merits at issue in this case.   This motion is supported by the following memorandum of points and authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

There are two types of intervention—intervention as of right and permissive intervention — and they are governed by different standards. Compare FED. R. CIV. P. 24 (a), with FED. R. CIV. P. 24(b). The proposed intervenor has moved to protect her rights.

The proposed intervenor argues that she is "alleg[ing] at least three or more common questions of law or fact."  She contends that she is seeking to intervene to address three central issues in this case which Plaintiff Alex Bednar states as follows:

1

1)

3. Defendant John Morris Williams is the executive director of the Oklahoma Bar Association and works in Oklahoma County. On March 15, 2019, Williams spoke with Defendant Abby Broyles, who claims that Williams told her Mr. Bednar was not welcome in any court and was immediately disbarred based on the recent Supreme Court ruling in Mr. Bednar's case. Williams has indicated to Plaintiffs that he did not make such statements to Defendants KFOR and Broyles. Either KFOR / Broyles or Williams is being untruthful.

2)

4. Defendant Abby Broyles is a third year law student and a news reporter for Channel 4 in Oklahoma City, who lives in Oklahoma County. She has published a false news report that is currently immediately impacting Plaintiff Mr. Bednar's ability to practice law, based on known falsities, that she and her supervisor "Chuck" have been made aware are false. Both she and "Chuck" claim that Defendant Williams and the Bar Association clearly told them that Mr. Bednar had been prevented from appearing in courts, and falsely published on local news that on March 15, 2019, Mr. Bednar was "kicked out" of a local court, another falsity. Neither she nor the corporate entity that owns KFOR has retracted the false statements.

2

3)

2. Defendants Paul Hesse, Timothy Henderson, Howard Haralson and Don
   Andrews, are state court judges in Oklahoma and Canadian Counties who have
   taken action "in the clear absence of jurisdiction" as well as while performing
   non-judicial functions and administrative functions in a concerted effort to

   **deprive Plaintiffs of rights protected under the United States Constitution.
   Defendant Renee Troxell is the Oklahoma County Court administrator (and
   happens to be an attorney).**

## BACKGROUND

4.    Intervenor Alberta Rose Josephine Jones (JONES) hired Plainiff Alex Bednar to represent her
son, Ryan Garrett Jones in the following criminal case i.e. Oklahoma County Case No. CF 2017-3084.

5.    Plaintiff BEDNAR was hired on or about February 18, 2019.   BEDNAR waited until March 8,
2019 to appear in Oklahoma County Case No. CF 2017-3084 stating he could not appear until he
"sued" Defendant HENDERSON in "federal court."  BEDNAR delayed JONES' son's criminal case so
he could pursue his "redresses" first above her son's criminal proceedings which were an urgent matter.
Her son's previous attorney, Tate Wise, was fully aware of what BEDNAR was doing and "assisted".

6.    When BEDNAR was hired, Intervenor JONES had no knowledge of any pending matters in the
Oklahoma Supreme Court i.e. Case No STATE ex rel. OKLAHOMA BAR ASSOCIATION v.
BEDNAR  2019 OK 12 Case Number: SCBD-6618 Decided: 03/12/2019 or his bar revocation.
It was never discussed. BEDNAR briefly discussed he was in the "news".  Intervenor JONES was
aware of his "suing" various entities including "judges" whom he deemed violated his rights but
nothing more.  The issue of his "license" suspension was never ever discussed.

3

7.    Intervenor JONES became knowledgeable of the issues surrounding BEDNAR's license to practice law from Defendant Abby Broyles (BROYLES) in the courtroom of the Honorable Judge Timothy Henderson on the alleged date of March 15, 2019.

8.    Defendant BROYLES was speaking with a District Attorney from the Oklahoma County District Attorney's offices at the time someone "high" up in the Oklahoma County District Attorney's Office. Intervenor could overhear their conversation which took place "in the courtroom" while BEDNAR and DOE MCCONNELL were arguing. The Unknown District Attorney was "feeding" into the fenzi that was occurring while Intervenor JONES' disabled son was "present." It was a clear violation of his "civil rights". The District Attorney was not on the case. He had no hearing at that time because Defendant Henderson was not "present" in the Courtroom or on the premises at the time. It was said that Defendant Henderson was with Oklahoma Supreme Court Justice Douglas Combs discussing "what" ex-parte?  The events that took place this day need to be "investigated" in these proceedings.  This senior District Attorney needs to be added to these claims, additional causes of actions and counter-claims. He was not performing any meaningful function but to harass. He had no purpose in speaking with Defendant BROYLES. She had no purpose in speaking with him or even being present in the "courtroom."

9.    Intervenor JONES was present for a "hearing" to recuse the Honorable Judge Timothy Henderson i.e. Defendant HENDERSON.

10.    Prior to the hearing, Intervenor JONES had spoken with Defendant HENDERSON's baliff regarding delaying the hearing because BEDNAR could not be present at the specified time and place. BEDNAR had a previous hearing with the Honorable Judge CANAVAN in Pottawatomie County.

11.    Intervenor JONES was told that her son and BEDNAR had to be present and that the hearing would not be delayed.

12.    Defendant HENDERSON "never" "appeared". He gave "no excuse." It was believed he skipped the hearing because of Defendants BROYLES and TRIBUNE BROADCASTING.

4

13.    Intervenor "JONES" and her disabled son, Ryan Garrett Jones, rights were violated by both Defendants BROYLES, HENDERSON, TRIBUNE BROADCASTING aka KFOR and Does 1 thru 10 as stated by Plaintiff Bednar in paragraph 9 of his complaint:

> **9.  Plaintiffs are entitled to attorney fees and costs pursuant 42 U.S.C. §1988, as this action is brought to enforce provisions of 42 U.S.C. §1983, and including injunctive relief, which is always available if a Defendant is violating any known law.  After discovery, Plaintiffs also seek declaratory judgment that Defendants' acts and omissions are unconstitutional and/or unlawful.**

14.    BROYLES did tell "falsities" in her news reporting. She failed to mention that Defendant Henderson "lied" about his "whereabouts". Defendant BROYLES stated that Doe Assistant District Attorney Lori McConnell were behind closed doors "arguing" and "yelling" with BEDNAR. BROYLES failed to elaborate why the two were yelling loudly at each other. As of this "day", Defendant HENDERSON and DOE McConnell are still on the case even though the two have been "having" numerous "ex-parte" hearings regarding both Intervenor JONES and her disabled son. BEDNAR "filed" the following motions "see below", Defendant HENDERSON and DOE MCCONNELL have continued to "obstruct" justice and said Intervenor's rights as well as those of her son, Ryan Garrett Jones. It is a pattern consistent with Plaintiff BEDNAR's statements in this case.



# Only on 4: Disbarred attorney caught trying to practice law at Oklahoma County Courthouse

OKLAHOMA CITY - News 4 ran into a disbarred attorney trying to practice law in Oklahoma County Friday morning.

In Alex Bednar's disciplinary trial, the trial panel held he's unfit to be an attorney.

Then on Tuesday, the Supreme Court disbarred him, but that didn't stop him from showing up to court.

In a scathing opinion, the Oklahoma Supreme Court said Bednar tried to justify some of the "most egregious behaviors the court has encountered" and found that he violated over and over the rules of professional conduct attorneys must follow.

Disbarred, he still tried to represent a client in Judge Tim Henderson's courtroom Friday morning.

"Judge Henderson set a hearing for 10:00 this morning. I filed motions early in the week," Bednar said.


That hearing never happened.

Bednar got into an argument with a prosecutor behind closed doors, then told us he wanted Judge Henderson off the case.

"Last week I asked him to recuse because I filed a federal lawsuit against him. He has systematically, knowingly and willfully abused his office to prevent me as a human being, me as a party, access to the courts," Bednar said.

One of the violations for disbarment in the Supreme Court's opinion is for filing frivolous lawsuits against judges.

Allegations of fraud and deceit pour through the Supreme Court opinion, finding Bednar failed to competently represent his clients, harming numerous people, and costing them money.Bednar still denies all of it.

"It's very disturbing, some of the things that happened to me, in that trial and what led up to it," Bednar said.

Bednar says he'll be back in court Wednesday with his client, who is 10 days away from jury trial.

The judge told News 4 Bednar will not be practicing in his courtroom.

As part of his disbarment, the Supreme Court also ordered him to pay more than $20,000 to cover his court proceedings.

The court clerk at the Supreme Court told News 4 Bednar has 20 days to file a petition for rehearing.

Bednar says he plans to do that.

6

Docket in Oklahoma County Case No. CJ 2017- 3084

## IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY, OKLAHOMA

No. CF-2017-3084
(Criminal Felony)

Defendant HENDERSON was not present and the record does not show this fact...

03.15.2019 **CTFREE**                                                                        $0.00

**HENDERSON: PTC CONT TO 03-20-2019 9AM. A BEDNAR PERESENT, STATE BY ADA MCCONNELL.**

03.15.2019 **NO**                                                                           $0.00

**AFFIDAVIT OF ALEXANDER BEDNAR IN SUPPORT OF CONTINUANCE AND FURTHER DISCOVERY OF EXCULPATORY EVIDENCE**
*≛Document Available at Court Clerk's Office*

15.     DOE MCCONNELL never responded to the following regarding "exculpatory" evidence and in fact has destroyed evidence.. continues to "withhold" videos and 911 tapes. MCCONNELL never filed an answer to an order of the court regarding said motion to recuse Defendant Henderson even though so ordered.  MCCONNELL does whatever she wants. Obstructs justice,  violates Intervenor Jones' son's rights. Defendant HENDERSON is a "co-conspirator." Additional DOES and "co-conspirators" named by Intervenor JONES i.e. Tate Wise and Robert F. Groshon, Jr.

7

03-20-2019 **EAA**   JONES, RYAN GARRETT   N/T-1420   Mar 20 2019 10 31 2:27 AM   $ 0.00

**SPECIAL ENTRY OF APPEARANCE FOR DEFENDANT TO FINALIZE MOTIONS, AS WELL AS THE DEFENDANT'S AUTISM DIAGNOSIS, AND DISCUSSIONS WITH THE DEPARTMENT OF MENTAL HEALTH GENERAL COUNSEL REGARDING THIS ISSUE**

03-20-2019 **CTFREE**   JONES, RYAN GARRETT   N/T-1420   Mar 20 2019 10 31 2:27 AM   $ 0.00

**HENDERSON: DEFT APPEARS IN PERSON. COURT SETS HEARING ON MOTION TO RECUSE FOR APRIL 18 2019 9AM. STATES ORDERED TO FILE A RESPONSE TO DEFTS MOTION TO RECUSE ON 04-04-2019. COURT SETS HEARING ON MOTION FOR COMP HEARING ON MAY 15 2019 9AM. COURT REPORTER KRISTIN TAYLOR PRESENT**
*Document Available at Court Clerk's Office*

16.    Plaintiff BEDNAR does not have "clean hands." He filed this lawsuit with Intervenor JONES' hard earned money.

17.    He made a "mess" of Intervenor JONES' son's criminal proceedings. Instead of simply filing a motion to recuse Defendant HENDERSON for "bias" and "grievous" harm to said Intervenor's disable son, Plaintiff BEDNAR focused solely on himself.   He was assisted by DOE Tate Wise.

18.    Plaintiff BEDBAR's rights most likely have been violated by said state players but the "JONES" rights were also violated by several of the state players as well as Defendants Broyles, HENDERSON, TRIBUNE BROADCASTING and DOES MCCONNELL, GROSHON and WISE.

19.    Plaintiff BEDNAR has valid Civil Rights claims under 1983 as well as actions taken in clear violation of jurisdiction as well as while as those Defendants/Does performing non-judicial functions and administrative functions in a concerted effort to deprive Intervenor JONES and her disabled son, Ryan Garrett Jones, of rights protected under the United States constitution.

8

20.     Defendant HENDERSON misrepresented the "truth" about his "whereabouts" on March 15, 2019. There was a scheduled hearing to recuse said Defendant and he "was not present". He ordered Intervenor JONES and her son, Ryan Garrett Jones, to be present. His actions were/are unconscionable. Doe LORI MCCONNELL knew that Defendant HENDERSON would not be present, Defendants BROYLES and TURNER BROADCASTING misrepresented the "facts." Who was inevitably harmed by the callous lack of respect of the proceedings was Intervenor JONES and her son, Ryan Garrett Jones. Henderson rescheduled the hearing for a later time that day and "BEDNAR" could not be present – another violation of said Intervenor's son's civil rights. Defendant HENDERSON continues to violate Intervenor's civil rights and that of her son, Ryan Garrett Jones. Defendant HENDERSON has shown he has no respect for the rights of Oklahoma citizens in this state – of which Intervenor Jones' is.

21.     Intervenor JONES' motion to intervene is timely. No defendants have answered said "complaint" as of the filing of this Motion to Intervene. It appears none have been served as of this filing. Intervenor JONES wishes to serve Defendants TRIBUNE BROADCASTING, HENDERSON and BROYLES.

22.     If Plaintiff BEDNAR is opposed to said "intervention", Intervenor Jones wishes to have a full hearing on the matter.

23.     Plaintiff BEDNAR has added Defendants BROYLES and TURNER BROADCASTING to said complaint. Defendant HENDERSON violated said Intervenor's civil rights and that of her son, Ryan Garrett JONES prior to the March 15, 2019 and continues to do so in her son's criminal proceedings.

24.     BEDNAR was "ineffective" in said proceedings and is also culpable. He did not seem to care and failed to "effectively" recuse Defendant HENDERSON from said proceedings and "obtain" valuable evidence in the case which has either been willfully destroyed and/or "negligently" withheld by DOE MCCONNELL. Defendant HENDERSON has a known history of "withholding" evidence in such cases so that defendants can be "wrongfully" charged and sent to "prison" unlawfully in clear violation of their civil rights.

9

## **CONCLUSION**

25.     FRCP **Rule** 24. Intervention. If an intervenor claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Respectfully Submitted,

Alberta Rose Josephine Jones

Pro Se Litigant
PO Box 2175
Stillwater, Oklahoma 74076
9hockeymom@gmail.com
405-780-3214

### CERTIFICATE OF SERVICE

I hereby certify that on this ___12th___ day of August__, 2019_, a true and correct copy of the foregoing pleading was forwarded by (email ) to Alex Bednar (Plaintiff) at the address of bednarconsult@gmail.com.

Alberta Rose Josephine Jones, Pro Se

August 12, 2019

10

11

Exhibit (1)

In support of Motion to Intervene

# Only on 4: Disbarred attorney caught trying to practice law at Oklahoma County Courthouse

POSTED 6:00 PM, MARCH 15, 2019, BY ABBY BROYLES, *UPDATED AT 06:51PM, MARCH 15, 2019*

**Only on 4: Disbarred attorney caught trying to practice law at Oklahoma County C...**



OKLAHOMA CITY - News 4 ran into a disbarred attorney trying to practice law in Oklahoma County Friday morning.

In Alex Bednar's disciplinary trial, the trial panel held he's unfit to be an attorney.

Then on Tuesday, the Supreme Court disbarred him, but that didn't stop him from showing up to court.

In a scathing opinion, the Oklahoma Supreme Court said Bednar tried to justify some of the "most egregious behaviors the court has encountered" and found that he violated over and over the rules of professional conduct attorneys must follow.

Disbarred, he still tried to represent a client in Judge Tim Henderson's courtroom Friday morning.

"Judge Henderson set a hearing for 10:00 this morning. I filed motions early in the week," Bednar said.

That hearing never happened.

Bednar got into an argument with a prosecutor behind closed doors, then told us he wanted Judge Henderson off the case.

"Last week I asked him to recuse because I filed a federal lawsuit against him. He has systematically, knowingly and willfully abused his office to prevent me as a human being, me as a party, access to the courts," Bednar said.

One of the violations for disbarment in the Supreme Court's opinion is for filing frivolous lawsuits against judges.

Allegations of fraud and deceit pour through the Supreme Court opinion, finding Bednar failed to competently represent his clients, harming numerous people, and costing them money.Bednar still denies all of it.

"It's very disturbing, some of the things that happened to me, in that trial and what led up to it," Bednar said.

Bednar says he'll be back in court Wednesday with his client, who is 10 days away from jury trial.

The judge told News 4 Bednar will not be practicing in his courtroom.

As part of his disbarment, the Supreme Court also ordered him to pay more than $20,000 to cover his court proceedings.

The court clerk at the Supreme Court told News 4 Bednar has 20 days to file a petition for rehearing.

Bednar says he plans to do that.

# EXHIBIT (2)

**FILED**

MAR 2 5 2019

## IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY____A.V._____,DEPUTY

| | |
|---|---|
| (1)ALEXANDER BEDNAR, individually and | ) |
| As parent and guardian of | ) |
| (2)M.F.B., a minor child | ) |
|     Plaintiffs, | ) |
| v. | ) Case *No. CIV 2019*-279-R |
| | ) |
| (1) PAUL HESSE, individually, | ) |
| (2) TIMOTHY HENDERSON, individually, | )    JURY TRIAL |
| (3) DON ANDREWS, individually, and | ) |
| (4) HOWARD HARALSON, individually | ) |
| (5) RENEE TROXEL, individually and officially | ) |
| (6) JOHN MORRIS WILLIAMS, individually and in | ) |
|    in his official capacity | ) |
| (7) ABBY BROYLES, an individual | ) |
| (8) TRIBUNE BROADCASTING, d/b/a KFOR | ) |
|    Defendants | ) |

## COMPLAINT

COME NOW, Alexander Bednar, individually and as parent and guardian

of M.F.B, a minor, and for their Complaint and request for immediate injunction

against the listed Defendants allege and state as follows:

## PARTIES

1. Plaintiff Alexander Bednar has been a practicing attorney in Oklahoma and is
   the parent of minor child MFB both of whom are residents of Oklahoma
   County, Oklahoma.

2. Defendants Paul Hesse, Timothy Henderson, Howard Haralson and Don
   Andrews, are state court judges in Oklahoma and Canadian Counties who have
   taken action "in the clear absence of jurisdiction" as well as while performing
   non-judicial functions and administrative functions in a concerted effort to

deprive Plaintiffs of rights protected under the United States Constitution. Defendant Renee Troxell is the Oklahoma County Court administrator (and happens to be an attorney).

3. Defendant John Morris Williams is the executive director of the Oklahoma Bar Association and works in Oklahoma County. On March 15, 2019, Williams spoke with Defendant Abby Broyles, who claims that Williams told her Mr. Bednar was not welcome in any court and was immediately disbarred based on the recent Supreme Court ruling in Mr. Bednar's case. Williams has indicated to Plaintiffs that he did not make such statements to Defendants KFOR and Broyles. Either KFOR / Broyles or Williams is being untruthful.

4. Defendant Abby Broyles is a third year law student and a news reporter for Channel 4 in Oklahoma City, who lives in Oklahoma County. She has published a false news report that is currently immediately impacting Plaintiff Mr. Bednar's ability to practice law, based on known falsities, that she and her supervisor "Chuck" have been made aware are false. Both she and "Chuck" claim that Defendant Williams and the Bar Association clearly told them that Mr. Bednar had been prevented from appearing in courts, and falsely published on local news that on March 15, 2019, Mr. Bednar was "kicked out" of a local court, another falsity. Neither she nor the corporate entity that owns KFOR has retracted the false statements.

2

5. Because Plaintiff Mr. Bednar still has statutory time to respond to the allegations in his bar case, the knowing false publication by Broyles / KFOR / Williams is immediately frustrating his ability to conduct work activity.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as the factual claims and allegations asserted herein arose under 42 U.S.C. §1983.

7. Further, this Court has subject matter jurisdiction in that Plaintiffs' rights guaranteed under the Fourteenth Amendment United States Constitution were violated by Defendants.

8. All factual claims and allegations asserted herein arose entirely within the Western District of Oklahoma and venue is proper in this district.

9. Plaintiffs are entitled to attorney fees and costs pursuant 42 U.S.C. §1988, as this action is brought to enforce provisions of 42 U.S.C. §1983, and including injunctive relief, which is always available if a Defendant is violating any known law. After discovery, Plaintiffs also seek declaratory judgment that Defendants' acts and omissions are unconstitutional and/or unlawful.

## RELEVANT FACTS AND CONCERNS

10. The Fact pattern below details misrepresentations and abuses by Defendants, in conspiring with each other to commit constitutional torts.

11. Defendant Judge Paul Hesse was captured in a recording taken from a hallway on November 27, 2018, where he is *__loudly bragging to his staff that he had knowingly violated Mr. Bednar's rights earlier that day__*. See Exhibit 28

3

(never analyzed by a court of law to date). Hesse admits on tape at :29 seconds he knows the law under Rule 15 requires him not to take any action until the recusal process is finalized, *but that by refusing to set Mr. Bednar's motion to recuse on his docket, he could rule procedurally attack Mr. Bednar*. As such, Hesse on this recording is verbalizing his animus toward Mr. Bednar and denying Mr. Bednar's constitutional right of access to the courts, guaranteed under the US and Oklahoma Constitutions. This recording alone should cause this high court to issue an investigation into the disturbing pattern of wrongdoing that Defendants have propagated against Plaintiffs and others like Plaintiffs whom they dislike.

12. Earlier on that date (November 27, 2018) Defendant Hesse stated on a record that he would not allow Mr. Bednar to set any Motions on his docket. The pattern of conduct by Hesse and the other Defendants proves animus and a conspiracy to harm Plaintiffs and deprive them of procedural due process.

13. Hesse's admissions on the tape (Ex. 28) proves his calculated action to limit Plaintiffs' procedural rights under the Constitution, which guarantees access to the courts, by refusing to set motions for hearing.

14. Defendant Haralson is a former divorce judge in Oklahoma County, who presided over the Harold Hamm divorce, and who had previously given custody of a child to child molester, such story making national news. Moreover, Defendant Haralson is friends with Lisa Hammond, Mr. Bednar's ex girlfriend, who is a judge in Oklahoma County and who badmouthed and

4

defamed Mr. Bednar since 2008 when they broke upt. Defendant Haralson, when asked by Mr. Bednar to recuse, refused to answer whether Judge Hammond or other judges in the courthouse had badmouthed Mr. Bednar.

15. Defendant Troxell orchestrated and conspired with the other defendants to abuse their office and take actions and omissions purposefully designed to deny Plaintiffs' constitutional rights over the past several years.

16. Under information and belief based on conversations with Defendant Troxel and with judges, Defendant Troxell has defamed Plaintiff Mr. Bednar to Oklahoma Supreme Court Justice Douglas Combs and other judges and justices, in a calculated effort to harm Mr. Bednar and his reputation, over the last three (3) years, after Mr. Bednar filed a lawsuit seeking injunctive relief against state court judges outside of their judicial capacities, including Judge Barbara Swinton and Judge Lisa Hammond (his ex girlfriend) both of whom were confirmed by credible witness statements and recorded conversations to be defaming Mr. Bednar at social functions, at nonprofit events, and in other situations outside of their role as judges (Okla. County Case CJ-2016-1923). Under information and belief, Defendant Troxel sabotaged such lawsuit, and took action to procedurally prevent Mr. Bednar due process.

17. After defaming Mr. Bednar to Justice Douglas Combs, she convinced Justice Combs that "all judges" in Oklahoma County had recused from the case against Judge Swinton – when such was not true at all – in fact, judge Andrews was not even approached by her. Defendant Troxel caused that case (CJ-16-

5

1923) to be transferred by Justice Douglas Combs out of Oklahoma County to Judge Duel in Logan County. Under information and belief, Judge Duel was asked to dismiss the lawsuit with prejudice, and prevent Mr. Bednar any relief.

18. In 2016, Judge Duel indicated to Mr. Bednar that Defendant Troxel had informed him that "all judges in Oklahoma County" had recused and that *"no judge could hear Mr. Bednar's cases."*

19. However, Oklahoma County Judge Don Andrews was not aware of such lawsuit (CJ-2016-1923) and *did not know he had been recused in it when questioned about it by Mr. Bednar on August 24, 2016. See* Exhibit 12, Tr. P. 44 ln 23 to P. 45 ln. 8 (Judge Andrews stating "no" as his response to Mr. Bednar asking whether he was aware of all judges recusing).

20. After learning that Defendant Troxel had made the statement that no judge could hear Mr. Bednar's cases, Mr. Bednar approached Defendant Troxel and asked her whether she would consider transferring his divorce action out of county, given the discussions among judges about Mr. Bednar. She stated that she refused to do so, and indicated that he would have to suffer the consequences of having to have his divorce heard in Oklahoma County.

21. What is disturbing is that in the last nine months, it has become clear through Defendant Haralson's testimony under oath (ie. Exhibit 27) when he slipped up and admitted that in ex parte clandestine meetings with Ms. Troxel (Hildebrandt) he and she decided the ultimate outcome of his ruling on a

6

Protective Order matter which Mr. Bednar won. However the relief that Mr. Bednar was entitled to was denied through these clandestine meetings, when Defendants Haralson and Troxel "decided together" Orders about Mr. Bednar's case.

22. The very fact that Defendant Troxel regularly met with with Plaintiff Mr. Bednar's divorce judge (Defendant Haralson) and discussed matters that influenced negative rulings in that divorce case, should cause the reader of this pleading to immediately recommend an injunction against Defendant Troxel, whose position as the Court administrator of Oklahoma County does not include the ability to conspire with a sitting judge in order to fabricate orders that deprive Plaintiffs of consitutional procedural due process.

23. Because the Oklahoma County Court administrator happens to be an attorney, does not give her the ability to pressure sitting judges to issue orders calculated to harm a litigant's rights. A special master should investigate the goings-on in Oklahoma County as these relate to Defendant Troxel instanter.

24. In an administrative trial last May, a subpoena was issued to Defendant Troxel, for her communications with judges in Oklahoma County, and a request to take her deposition was issued. Defendant Troxel refused to provide any information, making it appear extremely suspect as to what else she has done with other judges to Plaintiffs' detriment.

25. Apparently the pattern of falsely stating that "all judges had recused" was falsely told by Defendants to Judge Truong recently by Defendants Troxel and Henderson, as Judge Truong repeated that false representation made to her in her conversation with Mr. Bednar as the reason *she was told her transfer of this case to Judge Hesse was filled out by Judge Henderson for her to sign.* Exhibit 5, recording of Judge Truong July 27, 2018 at 2:09. That recording proves the ongoing pattern of manipulation of facts, Local Rules, and power, in order to cause Judge Hesse, who has admitted his animus against Mr. Bednar (ie. in Exhibit 28), to continue to spitefully deprive Plaintiffs of constitutional rights.

26. Just after Judge Duel issued a dismissal of that suit with prejudice, Mr. Bednar filed a timely motion to set aside the dismissal, in order to procure an appealable order. CJ-2016-1923.

27. Under information and belief, Defendant Troxel communicated with Judge Duel and discussed with him that he could refuse to set Mr. Bednar's timely filed, constitutionally sound Motion to Set Aside the default judgment. In fact, the docket sheet shows that Judge Duel wrote a letter that was placed in the court file in CJ-2016-1923, and under information and belief, Defendant Troxel requested such letter, impacting Mr. Bednar's procedural due process.

28. To this date, Judge Duel has refused to set the properly timed motion to set aside his default judgment, in violation of Local Rules 10, 11 for Oklahoma County, and contrary to Title 12 procedure in Oklahoma, thus preventing Mr. Bednar the ability to have an appealable order. Under information and belief,

8

this deprivation of due process was orchestrated at Defendant Troxel's recommendation, and it is counterintuitive that the Supreme Court, who oversees her office, was informed of the matter by her.

29. Under information and belief, this tactic of Defendant Troxel encouraging judges to "refuse to set on the docket" Mr. Bednar's Motions is legion and appears to have been communicated and acted upon with Douglas Combs' knowledge and approval. Thus, Defendant Troxel has encouraged the Defendant Judges to violate Plaintiffs' rights, with guidance and/or approval from the Chief Justice of the Oklahoma Supreme Court, Douglas Combs.

30. The fact that Defendant Troxel has had inappropriate and disturbing "puppetteer" conversations with the Chief Justice of the Oklahoma Supreme Court, Douglas Combs, regarding the creation of calculated steps to recommend to judges how to direct and influence the outcomes of cases to Plaintiffs' detriment (such as Judge Duel and Judge Swinton[1] with apparent

---

[1] Judge Swinton, friends with Judge Lisa Hammond, both of whom have actively defamed Mr. Bednar in front of numerous witnesses (including attorneys), some of whom have shared such knowledge in recordedconversations available as evidence, has actively refused to allow Mr. Bednar to set on her docket his timely filed Motion to set aside a frivolous Order on Summary Judgment she issued in case CJ-2015-472 on June 5, 2015 after she coached the opposing counsel in that case ex parte to go to the bankruptcy court and determine certain issues and come back ex parte so she would grant his motion for summary judgment against Mr. Bednar. Under information and belief, it was Defendant Troxel who approved and approved and recommended to Judge Swinton that she refuse to set Mr. Bednar's motion, denying Plaintiffs the constitutional right of access to the courts, guaranteed under the Constitution and state law. Opposing counsel in that case before Judge Swintton *admitted to Judge Cornish that Judge Swinton had coached him ex parte prior to issuing the Order of June 5, 2015*. Furthermore, Judge Swinton refused to recuse in that case (which included Mr. Bednar as a defendant) even though she had just recused from another case involving Mr. Bednar as an attorney - Mr. Bednar having presented to her the very same arguments for recusal in both cases. In conclusion, in collusion with Defendant Troxel, Judge Swinton refused to set on her docket Mr. Bednar's timely filed July 6, 2015 Motion to set aside the Judgment she issued on June 5, 2015 against Mr. Bednar's LLC (insinuating fraud by Mr. Bednar). Mr. Bednar claimed he had not been served and that he had filed bankruptcy a month prior. His Motion conclusively showed impossibility of judgment (wherein Mr. Bednar pointed out that opposing counsel's damages accruing from

9

instructions to deprive Plaintiffs of due process, justifies an immediate injunction against the Defendants and a thorough ethical investigation.

31. This entire fact pattern is abhorrent to the very notion of justice itself.

32. Defendant Judge Howard Haralson admitted under oath in 2018 (Exhibit 27) that ***Defendant Troxel helped him decide ex parte the outcome of a protective order matter in Mr. Bednar's divorce, to Mr. Bednar's detriment, without Mr. Bednar, his attorney, or opposing counsel present.***

33. Defendant Troxel admitted on numerous occasions to Mr. Bednar that she met with Judge Haralson to decide the procedural outcome of the bogus Protective Order matter that was won by Mr. Bednar, which included bad faith actions by Mrs. Bednar's attorney in their divorce. The transcript shows that both Defendant Haralson and Defendant Troxel incorrectly understood the facts, yet the ruling they decided that was detrimental to Mr. Bednar has never been set aside or addressed by anyone, including the disturbing violations of procedural due process throughout Mr. Bednar's divorce case, which is currently before the Oklahoma Supreme Court.

34. After Defendant Troxel admitted to Plaintiff Mr. Bednar that she clandestinely met with his divorce judge (Defendant Haralson) and gave him advice as to how to deny Mr. Bednar due process in his divorce case and a bogus protective

---

the lease opposing counsel signed in ***September of 2014*** could never be attributed to Mr. Bednar's LLC and is ***an impossibility, as the LLC was not even formed until December of 2014!***). Defendant Troxel's pattern of coaching judges to avoid setting motions on their dockets, is pandemic, and her ex parte meetings with judges to decide the outcomes of Mr. Bednar's cases is 1) unethical, 2) a violation of Title 5 as she is an attorney, 3) a violation of judicial canons – as judges are not to discuss cases without all attorneys present, 4) violation of local rules

10

order case that Mr. Bednar's wife had filed and lost (and which was orchestrated by her attorney as an underhanded tactic to keep MFB from her father Mr. Bednar), Mr. Bednar is justified in exercising his right to seek justice against Ms. Troxel, and to seek an injunction against her and damages for violations of constitutionally protected rights.

35. Defendant Troxel, in self-admitted concert with the other Defendants, has met with them, and under information and belief, has provided directives for the other Defendant judges to deprive Plaintiffs of their rights, in violation of 42 USC 1983. Defendant Troxel and the Defendants have met with one another and discussed strategy to deprive Mr. Bednar and MFB of their rights in court.

36. Specifically, Defendant Troxel, Judges Andrews, Henderson and Hesse have conspired to transfer Plaintiffs' cases to Judge Hesse in Canadian County, to materially alter a June 8, 2018 minute order striking a default judgment hearing that Defendant Andrews ruled on and later admitted in recorded conversation was stricken, and to deny Plaintiffs the opportunity to set matters for hearing (the same theme that Defendant Troxel has encouraged other judges to do in order to violate Plaintiffs' constitutional right of access to the courts, as well as violation of procedural due process).

37. Defendants have perfomed non-judicial administrative functions, outside of any jurisdiction given to them, and have taken calculated spiteful, egregious actions designed to cause harm to Plaintiffs and to deprive them of their rights.

38. For example, on or about Friday September 21, 2018, Mr. Bednar sought an emergency motion to prevent the Oklahoma County Sheriff from removing him and MFB from the homestead, based on law of the case in CJ-2016-5004 as well as CJ-2015-192, as Judge Andrews had agreed could be consolidated in a hearing in February of 2017, and he had ruled in CJ-2015-192 that a writ of assistance from the sheriff was not implied in a confirmation of sheriff sale, and he required RCB's attorneys to file a separate request for writ of assistance. See Exhibit 29 (transcript at p 908 lns 5-8 where Judge Andrews admits under oath that the writ of assistance was taken out of an order confirming a sheriff sale in his court).

39. Under information and belief, and witnessed action, Defendants Troxel, Andrews, and Henderson, met and chose the following course of action that each of them knew was 100 percent false: that the case CJ-2015-192 was administratively closed. The docket sheet shows that was never the case, as there was no administrative closing order. Rather, the docket sheet shows that outstanding motions were set and re-set in early 2017 and have yet to be ruled on. Defendant Henderson, on September 21, 2018, as the chief judge, refused to hear Plaintiffs' emergency motion and verbalized that the case was "closed."

40. As Mr. Bednar and his daughter MFB were in his courtroom, Defendant Henderson refused a court reporter, and refused to even hear the emergency motion, falsely declaring that the case was closed, and therefore denying an emergency stay of the sheriff writ of assistance on that day.

41. As a result of Defendants' calculated actions to deny Plaintiffs due process outside any jurisdiction to do so, and in a definite pattern of action to refuse to hear and set motions, Defendants intentionally caused Mr. Bednar and MFB to become homeless on September 21, 2018, and allowed the sheriff to break into the house and force them out onto the streets (even though RCB had received consideration and promised to convey ownership to them through the mediation orchestrated by the Honorable Judge Charles Goodwin).

42. Defendants Troxel, Andrews, Henderson, and Hesse, conspired to violate state law found in the judicial canons, as well as procedure and continue to do so to this day.

**DEFENDANTS EXHIBITED A PATTERN OF ABUSE BY ADMINISTRATIVE FUNCTION AND ACTED OUTSIDE OF ALL JURISDICTION, OUTSIDE OF JUDICIAL FUNCTION, INTENDED BY DEFENDANTS TO DEPRIVE PLAINTIFFS OF THEIR RIGHTS–AND TAPE RECORDINGS PROVE THE CONSPIRACY AND MALFEASANCE**

43. On May 18, 2018, Judge Andrews' office contacted Mr. Bednar (Exhibit 18) at 2:33 pm and indicated that all motions on Judge Andrews' docket were stricken, and that Judge Henderson had transferred the case to Judge Hesse in Canadian County. *See* Exhibit 11 (recording of May 21, 2018 of Judge Andrews' office admitting Judge Henderson had transferred the case to Canadian County to Judge Hesse).

44. Facts learned indicate Judge Timothy Henderson contacted Canadian County Judge Paul Hesse, then directed judge Cindy Truong to sign a transfer order to send this case to Canadian County (causing the transfer order to be filled out before it was presented to judge Truong), contrary to Judge Hesse's and Judge Henderson's

averments on the record and in Orders signed by them that Judge Truong on her own chose to transfer the case to Canadian County and allegedly created that order. *See* Exhibit 15 p. 36, lns 19-21 and Exhibit 20 p. 1 (third paragraph) and Compare with Exhibit 5, recording of Judge Truong from July 27, 2018 at 1:26 (saying "yes" that ***another judge did paperwork and she then signed transfer order***); at 2:09 (Judge Truong states she had been instructed, by Judge Henderson, that "every other judge had recused" from all Mr. Bednar's cases), and at 2:30 in the recording (Judge Truong states "they give [order] to me for transfer I just sign it").

45. Therefore, Judge Hesse and Judge Henderson acted in concert to coordinate the transfer of Plaintiff's case to Judge Hesse, in violation of Oklahoma County Local Rules, and with false information having been given to Judge Truong – as not all judges had recused from Mr. Bednar's cases (Judge Davis has not recused, and Judge Pemberton has not recused, *inter alia*).

46. The guise under which Judge Henderson has caused the transfer of Mr. Bednar's cases to Judge Hesse is strange and biased, misrepresenting to Judge Truong that all judges had recused from Mr. Bednar's cases. Exhibit 5. The fact that Judge Hesse has chosen to espouse the notion that the transfer was not by Judge Henderson (even though the two communicated per Judge Andrews' office communications–Exhibits 11,18), is suspect. Judge Hesse incorrectly identified the transfer Order as "made by the chief judge Cindy Truong on May 18, 2018," (Ex. 15 p. 36), in light of the fact Judge Truong stated she did not make it at all but simply signed it. Exhibit 5.

14

47. Judge Henderson was asked by Mr. Bednar on June 28, 2018 why he transferred cases to Judge Hesse, given the fact not all judges in Oklahoma County had recused themselves. See Exhibit 10 (recording of Judges Andrews and Henderson on June 28, 2018, where at 6:45 Judge Henderson is aware that Judge Davis had not recused; at 7:27 Judge Henderson states that "he does not know why he transferred cases" to Judge Hesse and that he will "look into it" and get back to Mr. Bednar, thinking that the case should not have been transferred to Canadian County "unless all judges recused"; at 10:02 Judge Henderson states he "does not have any independent recollection" as to why he transferred this case to Canadian County; at 11:22 he states "he will look into it;" and at 12:50 Judge Henderson states that perhaps an "out of county" judge [outside of Canadian or Oklahoma County] should handle Mr. Bednar's personal cases).

48. With full knowledge, (as explained below), that Judge Don Andrews ruled to strike the June 8, 2018 Motion for Default Judgment, filed by Plaintiff on May 16, 2018 and set on Judge Andrew's docket in CJ-2016-5004, Judge Paul Hesse nevertheless ruled on such Motion without any notice to Mr. Bednar, and then communicated an obvious indirect request to Jennifer Byler, Judge Andrews' clerk, to alter Judge Andrews' ruling on OSCN on June 8, 2018, so that OSCN no longer bears Judge Don Andrews' ruling striking the hearing that day. See Exhibit 14; see arguments and exhibits below.

49. Such concerted administrative non-judicial action violates judicial canons relating to supervision of staff, and was part of an ill-conceived agenda against Plaintiffs' interests, especially their constitutional procedural rights to due process.

15

**50.** Judge Hesse changed Judge Andrews' ruling in CJ-2016-5004 as a calculated effort
to deprive Plaintiffs of their rights (See Exhibit 19, email admission by Judge Paul
Hesse that Judge Don Andrews issued a ruling striking the Default Judgment
Hearing on Judge Andrews' Docket set for June 8, 2018) in violation of the law,
judicial canons, local rules, ethics, and procedural due process; *see* Docket sheet for
CJ-2016-5004 showing Judge Andrews entry is just prior to Judge Hesse's ruling
regarding default; *see* Exhibit 10 (recording on June 28, 2018 of Judge Andrews
who states at 1:10 *"it's my minute"* regarding the entry of June 8, 2018 that Judge
Hesse caused to be changed by suggesting to Jennifer Byler, Judge Andrews' clerk,
to take out the word "stricken"; at 1:14 Judge Andrews states *"it's [Judge Hesse's]
instructions to alter [Judge Andrews' ruling on OSCN]"*;

**51.** Judge Andrews' office contacted Mr. Bednar on May 18, 2018 (Ex. 18) and ruled
that all pleadings set on Judge Andrews' docket were Ordered stricken by Judge
Andrews and needed to be presented and re-set with Judge Hesse. Mr. Bednar has
procured his phone record that clearly corroborates a four-minute phone call on May
18, 2018 from Judge Andrews' office at 2:33 pm. (Exhibit 18). Judge Andrews
conspired with Judges Henderson and Hesse after Judge Hesse caused Judge
Andrews' minute order to be changed, to blame Judge Hesse for the responsibility to
return the minute order back to its original description (which would have allowed
Plaintiffs due process and prevent Judge Hesse from enforcing a default judgment).

**52.** A heated argument between Judge Hesse and Mr. Bednar occurred at one point
when Judge Hesse could not contradict the fact Mr. Bednar was not noticed to be in
Canadian County on June 8, 2018 at 1:30 pm for a default judgment hearing, which

16

Defendant Hesse has used to specifically continue to violate Plaintiffs' rights. Exhibit 15, Tr. p. 42 lns 13-25 to p. 43 lns 1-4. Of note is the fact Judge Hesse presents no evidence to explain exactly how Mr. Bednar was noticed to be before him on June 8, 2018, no evidence that Judge Hesse's office contacted Mr. Bednar, and Hesse refuses to respond to Mr. Bednar asking Judge Hesse how the notice to be before Judge Andrews (Exhibit 17), coupled with the May 18, 2018 phone call from Judge Andrews office striking the hearing (Exhibit 18) creates notice.

53. Mr. Bednar was told there was no hearing, and the Defendants caused a default judgment to occur clandestinely without due process; when Mr. Bednar pointed out to Judge Hesse that Judge Andrews' minute order on OSCN on June 8, 2018 showed that the default judgment hearing was "stricken," *__Judge Hesse took action to conceal his and the other judges' conspiracy and directed an Oklahoma County employee working for Judge Andrews to materially alter judge Andrews' ruling on OSCN attempting to hide his inappropriate, unlawful, non-judicial conduct outside of any jurisdiction__*.

54. Judge Hesse in fact had not docketed the default judgment motion, and therefore misrepresented on the record that the Default Judgment hearing was set in his court before him on June 8, 2018. Exhibit 15, Tr. p. 41, lns 22-25 to p. 42 lns 1-19.

55. Judge Hesse materially misstates on the record that CJ-2016-5004 "had been specially set and there were no other cases on the docket that day" (Ex. 15, Tr. p. 37 lns 18-20), in truth there was not one single motion set in his docket book on June 8,

2018. See Exhibit 9 (recording from Judge McCurdy's clerk who was handling Judge Hesse's docket book on July 23, 2018, and who is looking at the book which shows only jury week and no motions set at 1:30 pm).

56. Mr. Bednar asked Judge Hesse to come look at his docket book after the July 23, 2018 hearing, to show him there was nothing set, and that Judge Hesse had made a misrepresentation on the record. When Judge Hesse learned that Mr. Bednar wanted to see the docket book (which was in Judge Gary McCurdy's clerk's office), he contacted her and told her not to let anyone see it, and he went and snatched his own docket book after Mr. Bednar had looked at it with Judge McCurdy's clerk.

57. Judge Hesse acted strangely and refused to let Mr. Bednar look at the book any more, then refused to allow Mr. Bednar to show him that he was incorrect about having set any motion on June 8. Judge Hesse stormed off with the docket book and told Mr. Bednar he could only set things in the future in the book with the other side present. *However, Mr. Bednar had already seen the book and recorded the clerk confirming that there was absolutely nothing set on June 8, 2018 at 1:30 on Judge Hesse's docket.* (Ex. 9). Judge Hesse's conspiracy and his actions to misrepresent truth and facts and deny Plaintiffs access to the courts and deprive them of their rights is easily seen through the numerous calculated misrepresentations, actions, and omissions.

58. As such, Judge Hesse materially misrepresented the truth on the record about the second default judgment motion being "specially" set on his docket. This reason

alone is enough to consider injunctive relief against him and the other Defendants, and consider a special master to investigate these issues.

59. Moreover, on April 25, 2018, Defendant Andrews issued a default judgment order against Plaintiff Mr. Bednar in CJ-2016-5004, without any motion, sua sponte, in violation of law of the case, ethics (no ex parte), and in direct violation of Plaintiffs due process rights. This was a clear spiteful action, outside of any jurisdiction allowing him to do so.

60. Judge Andrews' calculated dislike of Plaintiff Mr. Bednar is apparent in a voluntary set of statements he made the following day April 26, 2018 under oath, admitting that the week prior to April 25, 2018, Defendant Andrews had met with the Oklahoma Bar Association, had prepared questions with them, and had indicated a dislike of Mr. Bednar to the Bar as well as his opinion tjat Mr. Bednar was paranoid or had a mental disorder! Exhibit 29.

61. On p. 908 of Exhibit 29 lns 5-8, Defendant Andrews admits that the law of the case was not to have a writ of assistance to oust Plaintiffs from their house. He and the other Defendants conspired to create a situation where this could happen anyway, while depriving Plaintiffs of their rights.

62. Contrary to Judge Hesse's attempts to blame Judge Andrews' clerk for changing Judge Andrews' ruling, Judge Andrews unequivocally stated to Mr. Bednar:

    a. (a) the OSCN ruling striking the June 8, 2018 hearing *was **Judge Andrews'** ruling* (Exhibit 10, recording, where Judge Andrews states at 1:10 "it's my

19

minute" and "*it's [Judge Hesse's] instructions to alter it*"), proving and admitting unequivocally to calculated violations of procedural due process.

b.   (b) that Judge Andrews communicated to Judge Hesse that Judge Hesse had caused a change of Judge Andrews' accurate ruling (striking of the hearing) (Exhibit 10 at 1:41 with Judge Andrews stating "the next thing you know the word 'stricken' is gone but we thought it was at [Judge Hesse's] request" and at 2:19 Judge Andrews states "*if it was set before me it was stri*cken" referring to the June 8, 2018 hearing); Exhibit 6 (recording of Judge Andrews July 27, 2018 where at 2:19 *Judge Andrews states in front of the Court Clerk legal counsel that he had procedurally stricken the June 8, 2018 and other matters set that had been filed May 16, 2018*; at 8:30 Judge Andrews indicates that Judge Hesse should be the person to change back the ruling to its proper content with the word "stricken" and that Judge Hesse "has the ball;" at 3:00 Judge Andrews promises on that date he will talk to Judge Hesse and explain to him that all hearings including the June 8, 2018 hearing had been ordered stricken). To date, Judge Hesse has refused to change the order back to its true ruling as per Judge Andrews; see Exhibit 8 (recording of Judge Andrews dated July 24, 2018, where at 2:24 Judge Andrews is asked by Mr. Bednar to change back his OSCN ruling as it had originally been written with the June 8, 2018 hearing "stricken," but Judge Andrews then states "it's [Judge Hesse's] call"; at 3:30 Mr. Bednar asks Judge Andrews whether he missed something and whether he had been told

by Judge Andrews' office to be in Canadian County, and Judge Andrews
between 3:45 and 4:45 indicates that Judge Hesse's ruling should be subject
to a motion to vacate and "there's no question it's my entry" referring to the
OSCN docket entry that Judge Hesse influenced to be changed by his email
– Exhibit 19). Mr. Bednar on July 23, 2018 indicated his knowledge to
Judge Hesse that Judge Andrews' office had contacted Judge Hesse per their
promise on June 28, 2018 (Exhibit 10) and that Judge Hesse should not be
blaming Judge Andrews' office for changing Judge Andrews' ruling.
Exhibit 15, p. 9, lns 15 to p. 10 ln 9. Lastly, Mr. Bednar reiterates on the
record that he is asking Judge Hesse to recuse for not restoring what he now
knows to be (on July 23, 2018) that Judge Andrews ruled stricken the June 8,
2018 hearing, and has not directed Ms. Byler to restore Judge Andrews'
ruling. See Exhibit 15, Tr. p. 13, lines 4-19, and p. 14 lns 4-21; see also
Exhibit 16, Tr. Aug. 7, 2018 p. 17 lns 13-20 (Judge Andrews and Judge
Hesse have spoken and Judge Hesse "still hasn't gone back and corrected the
docket entry of Judge Andrews" as a concern for Mr. Bednar, as one judge's
ruling has been altered and neither judge to date is willing to return the
ruling to its correct, original state).

c.  (c) The entry on June 8, 2018 was properly entered by Judge Andrews and it
    was to strike the default judgment hearing, not for it to be heard that day in
    Canadian County. Exhibits 6, 10. To date, none of the Defendants have re-
    entered the correct minute regarding Mr. Bednar's case.

21

63. Judge Hesse has knowingly and purposefully violated Plaintiffs' procedural rights known to him repeatedly as he issued an Order, and allowed a motion to be set on September 6, 2018, in light of the fact the recusal process was not procedurally exhausted. See Exhibit 21 (Notice of Recusal process in place and for Judge Hesse not to rule on any matter); compare with Docket Sheet (Ex. 23), showing Judge Hesse, in violation of state procedure, set a Motion on September 6, 2018.

64. Exhibit 28 (*new tape recording not analyzed by any court thus far*) proves that Judge Hesse purposefully is violating procedure in a calculated effort to violate Plaintiffs' rights.

65. Eventually, cases were sent back to Judge Davis, after Judge Henderson promised to do so. However, Recently, Defendants Henderson and Troxel apparently convinced Judge Davis to recuse in order to reassign cases to Defendant Hesse, even though at least one Oklahoma County Judge (Richard Ogden) has never recused. Defendants have conspired to violate Local Rules 3, 4 and 6 for Oklahoma County, which requires "random re-assignment" by the Court Clerk. Judge Richard Ogden should have received any and all cases that were "Randomly reassigned." The very fact that Defendant Hesse is overseeing any Oklahoma County cases proves conclusively that Defendant Henderson has per se violated Local Rules, and transferred a case to Judge Hesse against the law, in order to violate Plaintiffs' constitutional rights.

22

**66.** Proof of inappropriate collusion between Judge Hesse and Henderson exists. On June 28, 2018, Presiding Administrative Judge over Canadian an Oklahoma Counties Defendant Timothy Henderson states in Exhibit 10 at 7:27 that he doesn't know why he transferred the case to Judge Hesse and that he will "look into it" and get back to Mr. Bednar, something he never did. As such, is is counterintuitive that Henderson had an ulterior motive in violating local law that he never has been able to explain, proving his animus against Plaintiffs.

**67.** Judge Henderson indicates in Exhibit 10 that "unless all civil judges recused" the case should not have been transferred to Canadian County. At 10:02 of Exhibit 10 Judge Henderson again states he "does not have an independent recollection" as to why he caused the cases to be sent to Judge Hesse and again at 11:22 that he "will look into it." At 12:50 of Exhibit 10, Judge Henderson reiterates that perhaps an "out of county" judge may be needed to hear Mr. Bednar's personal matters, such as divorce, supporting the argument for forum non conveniens for Mr. Bednar's divorce.

**68.** Although Defendant Henderson, the Chief administrative judge stated his understanding of the law as it relates to Defendant Hesse, a judge under his administrative direction, he apparently communicated the opposite, and conpired with Hesse to violate law and procedure.

**69.** Specifically, Judge Timothy Henderson person stated on August 3, 2018 his knowledge of the law that Judge Hesse's Orders are stayed pending any recusal appeal (Exhibit 2, recording of Judge Timothy Henderson on August 3, 2018 at 7:30). Also, Judge Henderson ordered Mr. Bednar to set his emergency motion to

23

stay orders of Judge Hesse with his office, including the June 11, 2018 Default Judgment, entered after multiple requests for recusal. See Exhibit 2 at 5:33 to 6:21 (agreeing to hear the emergency motion "next week") and allowing the motion to be set on August 7, 2018 at 1:30 at 8:36.

70. However, Judge Henderson reversed himself, in apparent consistent concert and collusion with Judge Hesse to manipulate Plaintiff's procedural due process rights, in order to issue rulings adverse to Mr. Bednar, and he ruled on August 7, 2018 that he would no longer hear Mr. Bednar's emergency motion set on that date, and that Judge Hesse must hear it. See Exhibit 16, Tr. p. 19 ln 15 to p. 20 ln 8 (stating that "Judge Hesse" is to hear any further motions, in light of the fact the hearing of Exhibit 16 is a recusal hearing and the appeal process is in place. Please note that Judge Hesse also issued a hearing date of September 6, 2018 for a motion filed while he and Judge Henderson knew a stay was in effect, again contrary to the tenets of Rule 15. Defendant judge Henderson refused to hear the emergency motion and set the Motion to set aside his bizarre August 7, 2018 Order (Exhibit 20) on the same date as the inappropriately set hearing before Judge Hesse in Canadian County. See docket (Exhibit 23 – highlighted both hearing dates). It is clear that Judge Henderson manipulated the recusal process in Order to subject Plaintiff to Judge Hesse, who knows that law requires a stay. Exhibit 28.

71. Even though Judge Henderson had promised he understood the recusal process (Rule 15) meant that Judge Hesse could not rule on matters and that his orders should be stayed after recusal requests were made on June 8, 2018 (Exhibit 10 – recording of

24

June 28, 2018), and even though Judge Henderson allowed Mr. Bednar to set his Emergency Motion to Stay Judge Hesse's Default Judgment for August 7, 2018 at 1:30 (Exhibit 2 – recording of August 3, 2018), Judge Henderson apparently changed his course and altered his promises and violated his known understanding of the law to continue a targeted course of concerted action with Judge Hesse. See Exhibit 1, recording of Judge Timothy Henderson's clerk on August 9, 2018, who corroborates that after promising to allow Mr. Bednar to set both the recusal issue and the emergency motion for August 7, 2018, *Judge Henderson had her change the entry on OSCN to only reflect the recusal*.

72. More concerning is that Judge Henderson signed Exhibit 20 on August 7, 2018, but *directed his clerk to take it to the Court Clerk on August 9, 2018, delaying Mr. Bednar's ability to respond to it*. Judge Henderson's manipulations of law and fact, his unlawful sending of cases to Judge Hesse (with a misrepresentation that all judges recused – as Judge Ogden has never recused), and his directing Mr. Bednar to go before Judge Hesse while Judge Hesse's recusal was being appealed appears an action in concert with Judge Hesse and Defendant Troxel (who allowed it to happen) in order to effectuate an animus-driven agenda against Plaintiffs.

**MISREPRESENTATIONS AND OBVIOUS BIAS BY DEFENDANTS INCLUDE THE UNLAWFUL AND CONCERNING CHANGING OF AN EXISTING ORDER BY DEFENDANT JUDGE ANDREWS STRIKING A HEARING FOR DEFAULT JUDGMENT SET ON JUNE 8, 2018 IN CJ-2016-5004 WHICH WAS SET BEFORE DEFENDANT JUDGE DON ANDREWS IN OKLAHOMA COUNTY; DEFENDANT HESSE THROUGH NON JUDICIAL ACTION CAUSED THE MATERIAL ALTERATION OF THAT ORDER ON OSCN.NET IN ORDER TO JUSTIFY A BOGUS DEFAULT JUDGMENT AGAINST PLAINTIFFS, AS A PURPOSEFUL VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

73. Judge Andrews has admitted numerous times in recordings cited above that the June 8, 2018 Order he ordered his clerk Jennifer Byler to be published on OSCN was that the June 8, 2018 Motion for Default Judgment filed by Franklin American was "stricken." Judge Andrews' office has admitted that Mr. Bednar did not have notice to be in Judge Hesse's courtroom, and that Hesse's Order of June 11, 2018 should be "vacated." Exhibit 8, recording of July 24, 2018 at 3:45. Judge Andrews has also falsely stated to Plaintiff Mr. Bednar that he would tell Judge Hesse that Judge Hesse had caused an alteration of Judge Andrews' ruling, and that he would ask Judge Hesse to correct back the Order striking the June 8, 2018 hearing. See arguments supra. To date, neither Judge Hesse nor Judge Andrews has re-written on OSCN what the proper ruling was on June 8, 2018 in Oklahoma County Case CJ-2016-5004: that the Motion for Default Judgment was "stricken."

74. An immediate injunction should issue against the Defendants, requiring them to re-instate Judge Andrews' ruling, which he has admitted in lawful tape recorded conversations when he was not on the bench.

75. Judge Henderson, with the aid of Defendants Troxel and Andrews, after discussing their conspiracy with Defendant Hesse, caused transfer of case CJ-2016-5004 to Canadian County. Exhibit 11. Judge Henderson clearly has an agenda along with Judge Hesse, although he stated to Mr. Bednar on two separate occasions in his office, starting on June 28, 2018, that he would contact back Mr. Bednar regarding returning cases back to Oklahoma County and as to why Judge Hesse was chosen when Judge Davis had not recused.

26

76. Judge Henderson never followed through with his promises to Mr. Bednar, proving
his ill will. Rather, he did the opposite, and misrepresented to Mr. Bednar in his
Order and in the August 7, 2018 hearing what he had he stated in person regarding
procedural issues, which was captured on a tape recording, mentioned above. See
Ex 3, August 3, 2018 recording of clerk stating that Judge Henderson had received
Mr. Bednar's messages to contact him back and that he had not done so since June
28, 2018. Judge Henderson did not follow through with his promises to Mr. Bednar
as he wanted to follow through with his conspiracy to deprive Mr. Bednar and MFB
constitutionally protected rights.

77. The connection between Judge Henderson and Judge Hesse is further seen in the
docket sheet for Exhibit 24 (CJ-2017-1192 – where a June 1, 2018 hearing was
entered as before Judge Henderson, but in fact occurred in front of Judge Hesse in
Canadian County). There is absolutely no reason for Judge Henderson's name to
have been entered for Judge Hesse's, unless the two were colluding.

78. To date, neither Judges Hesse, nor Andrews, nor Henderson has re-instated Judge
Andrews' June 8, 2018 ruling striking the Motion for Default Judgment that day.
*See* Docket (Exhibit 23); *see* Plaintiff notice to be at Judge Andrews court, not
Hesse (Ex. 17); *see* arguments above and recordings that Judge Andrews 100
percent issued a ruling striking the hearing (Exhibits 4, 6, 8, 10 - recordings) as well
as Mr. Bednar's phone record of May 18 2018 (Ex. 18). When asked procedurally
about why Judge Hesse would blame Jennifer Byler when he directs her actions,
Ms. Byler, Judge Andrews' clerk, told Mr. Bednar on August 3, 2018 to speak to the

27

DA who represents the Court Clerk. Exhibit 7. However that meeting already
occurred July 27.

## ADDITIONAL STATEMENT OF FACTS

79. Plaintiffs incorporate by reference all of the allegations heretofore made, and
further state as follows:

80. Plaintiff MFB, a minor, is currently seven years old. A trust was created by
her grandfather, to allow RCB Bank, to convey title to their homestead
pursuant to a bankruptcy mediation agreement overseen by the Honorable
Charles Goodwin in March of 2017, per an Order to mediate issued by the
Honorable Thomas Cornish.

81. This mediation arose through Plaintiff Alex Bednar's bankruptcy, and the two
mortgage lenders on the homestead, RCB and Franklin American, were on Mr.
Bednar's creditor matrix.  RCB had filed a foreclosure action before the
bankruptcy, and filed an adversarial proceeding as well in the bankruptcy, also
asking the bankruptcy court for lifting of the stay to litigate its foreclosure
action. Franklin American neither filed a proof of claim, nor a request to lift to
stay to litigate in state court.  A discharge to Mr. Bednar was granted in
September of 2015.

82. RCB litigated its foreclosure action (state case CJ-2015-192) before Judge
Andrews, listed Franklin American (the other lender) as a Defendant, and
served Franklin American, who was represented by competent attorneys.

83. The Defendant Don Andrews is an Oklahoma County District Court Judge, who violated his oath of office and judicial canons (statutory law in Oklahoma), and clandestinely met with the Court administrator (Defendant Troxell) and the other Defendant Judges to orchestrate misrepresentations and prevent Plaintiffs due process according to law, in order to purposefully cause harm to Plaintiffs by violating their constitutional rights. His actions are described in further detail below.

84. Prior to the mediation ordered by Judge Cornish in early 2017, RCB had procured summary judgment from Judge Don Andrews, and had initiated a sheriff sale on July 14, 2016, where RCB was the highest bidder for fifty thousand dollars, approximately 1/12 the value of the house.

85. As such, title transferred to RCB Bank after the sheriff sale.

86. Franklin American was served with the Motion for Summary Judgment, heard in January of 2016, with notice of the sheriff sale for July 14, 2016, and with notice of confirmation of the sheriff sale before Judge Andrews in October of 2016. At no point did Franklin American or its attorneys contest the sheriff sale, nor did Franklin American file a requisite motion for deficiency or residue within ninety (90) days of the sheriff sale, in order to protect any mortgage or security interest it might have in the property per 12 OS 686.[2]

---

[2] See *Bank of Oklahoma v. Welco, Inc.*, 1995 OK CIV APP 43 at para. 17-18, *citing Baker v. Martin*, 538 P.2d 1048 (Okla. 1975) explaining that 12 OS 686 provides the exclusive remedy to a creditor in a case who has a residue interest after a sheriff sale, and requiring such creditor to file for deficiency as a "post judgment prerequisite" within 90 days, in order to receive the "unpaid balance due upon the original judgment."

**87.** A creditor "must file a motion for deficiency judgment within 90 days after the sale of the mortgaged premises or else suffer the consequences, ... i.e., the debt for which the mortgage stands as security will be deemed satisfied." *Id* at para. 19.   Franklin American failed to do so, and forever caused the debt for which the mortgage stood as a security to be deemed satisfied as a matter of law. *See e.g. Apache Lanes Inc. v National Educators Life Ins.*, 1974 OK 106 (failure of a creditor to seek deficiency judgment amount due as residue after sheriff sale not only bars creditor from asserting the debt against debtor, but also against guarantors).

**88.** Franklin American failed to follow the law, and lost its security interest as a matter of law within 90 days of the sheriff sale in CJ-2015-192 (Oklahoma County Case before Judge Andrews).  12 OS 686.

**89.** Franklin American, apparently not in contact with its litigation attorneys involved in CJ-2015-192 who received notice but did not contest RCB's sheriff sale in July of 2016, allowed another law firm (the Baer Timberlake firm) to file a second, redundant foreclosure action on the same property in September of 2016 (CJ-2016-5004), seeking to obtain title to the very same property, and listing all the same defendants who had been noticed of the sheriff sale in July of 2016 in RCB's foreclosure case (CJ-2015-192).

**90.** Plaintiff Mr. Bednar filed motions to set aside the sheriff sale confirmation of 2016, and to date, those motions have not been heard.

91. Franklin American's second foreclosure lawsuit (CJ-2016-5004) is barred as a
matter of law as a collateral attack on an existing case for title to the same
property under 12 OS 2004.2, as RCB was the prevailing party to title in CJ-
2015-192.  Defendant Don Andrews was assigned both cases.  In the second
foreclosure action by Franklin American Judge Andrews ruled in February of
2017 that all dispositive preliminary motions, including Mr. Bednar's motion
to dismiss, would need to be heard prior to any judgment on the Plaintiff
Franklin American's second redundant foreclosure case.  An attorney from the
Timberlake firm attended that hearing, and on the record agreed to the court's
ruling that no judgment would be entered without preliminary issues of
jurisdiction (and the like) being heard.

92. Under information and belief, that Timberlake attorney announced she was
leaving the firm in late April or May of 2018, and Don Timberlake (head
attorney) for the first time received the file and realized that his client's
interests in the property were extinguished as a matter of law. 12 OS 686.

93. The Defendant Renee Troxell has met with and communicated with the other
defendants and has conspired with them to purposefully abuse their offices as
judges, and prevent MFB the ability to enjoy the property that was to have
been conveyed to her trust pursuant to Judge Goodwin's mediation.  Also, she
and Plaintiff Mr. Bednar were clearly denied access to the courts, in violation
of their civil rights.

**THE NEW GOVERNOR OF OKLAHOMA HAS PROMISED TO HOLD AGENCIES ACCOUNTABLE, AND THIS CASE SHOULD BE A CASE STUDY FOR THE COUNCIL ON JUDICIAL COMPLAINTS: ALTHOUGH THE DISTURBING ABUSES OF OFFICE MENTIONED HEREIN WERE MADE KNOWN BY MR. BEDNAR TO THE COUNCIL ON JUDICIAL COMPLAINTS, NO ONE FROM THAT OFFICE EITHER INVESTIGATED OR CALLED MR. BEDNAR, AND NO INVESTIGATOR SOUGHT THE TAPE RECORDINGS MENTIONED IN STATE PLEADINGS, CLOSING THE INVESTIGATION AND ALLOWING THE DEFENDANTS TO CONTINUE TO VIOLATE CONSTITUTIONAL RIGHTS**

94. Why did Defendant Judge Andrews sign an ex parte default judgment in CJ-2016-5004 on April 25, 2018 against Plaintiff Alex Bednar in that foreclosure action, *without any motion being filed* and *without setting a Motion for Default on his docket by the mortgage company*? The local rules for Oklahoma County prohibit that kind of judicial conduct, prohibit blanket defaults without notice and an opportunity to be heard, and prohibit attorneys having ex parte clandestine meetings with judges. Canons of Judicial Ethics and Title 5 prohibit the clandestine action that occurred between Judges Andrews and Hesse, both of whom allowed the lender's counsel in CJ-2016-5004 to present ex parte orders of default, as well as other orders, in violation of Plaintiffs' Constitutional rights.

32

95. What kind of inappropriate relationship does Defendant Judge Don Andrews
    have with lenders' attorneys that he is able to have ex parte meetings with them
    and issue rulings presented ex parte without a motion, and without contacting
    Mr. Bednar, the attorney representing himself as a defendant, in CJ-2016-5004,
    when Mr. Bednar had appeared at hearings in the case and had filed pleadings?
    The answer is simple: abuse of power gone unchecked, coupled with animus
    against Mr. Bednar – this sort of unlawful conduct (violation of Canons of
    Judical Ethics codified in Title 5 of Oklahoma statutes) qualifies for injunction.

96. An investigation and consideration for impeachment should be considered for
    Judge Andrews and the other Defendants, as they have purposefully and
    knowingly violated their oaths of office and public trust through the actions
    outlined in this Complaint.  The tape recordings, docket sheet, pleadings,
    transcripts, and Orders demonstrate conclusively that these Defendants made
    calculated misrepresentations, in order to effectuate the deprivation of
    Plaintiffs' rights.

97. Plaintiffs will be seeking preliminary injunctive relief in this case.

98. These Defendants have abused their offices to purposefully and spitefully
    deprive Plaintiffs of rights protected under the Constitution, including but not
    limited to: conspiracy to prevent due process, *impacting and clandestinely
    deciding what will happen in Mr. Bednar's divorce*,[3] which has impacted

---

[3] The fact that a court administrator with a law degree wields enough power over sitting judges (who
perhaps believe she communicates her recommendations to or receives them from, Justice Douglas Combs)
to tell them what orders to issue, indicates a manipulation of the very constructs of our justice system.  Just

Plaintiffs MFB as well, a child of the divorce, inappropriately limiting and preventing Plaintiffs' access to the courts, having clandestine meetings to conspire and deprive Plaintiffs of procedural rights, and most recently, threatening incarceration for protected constutional action in Oklahoma, and conspiracy to deprive Plaintiffs of property without due process under 42 USC Section 1983.

99. Judge Hesse has issued recent orders preveenting Mr. Bednar from being able to file any pleadings in his cases before him, even pleadings arguing that Hesse does not have jurisdiction over CJ-2016-5004 per 12 OS 2004.2. Thus, Hesse this immediate moment, is abusing his office to violate constitutionally protected rights under the US and Oklahoma Constitutions, including the right of access to the courts.

100. In addition, Defendants have caused and/or directed administrative employees under their control to violate Plaintiff's rights and also violate Oklahoma Law, in turn violating Plaintiffs' constitutionally protected rights. Defendants' actions individually and in concert were designed to target Plaintiffs and deprive them of their rights, causing substantial damages.

101. Plaintiffs are currently homeless as a result of Defendants' spiteful, calculated actions in concert with one another, to violate Plaintiffs' rights. None of Defendants' actions are within judicial jurisdiction. Rather, their

---

as Dorothy realized the man behind the curtain was manipulating the truth, Mr. Bednar now has the ability to conclusively prove that the Oklahoma County Courthouse system of justice has been purposefully manipulated by Defendants to abridge his and his daughter's constitutional rights.

actions and omissions are part of a pattern of conduct to deprive Plaintiffs of their rights. Defendants Williams, Broyes, and KFOR are causing immediate harm through concerted action jointly and severally by causing to be published public statements that are false and meant to be spiteful and harmful, impacting Plaintiff Mr. Bednar's ability to work.

## JURY TRIAL REQUESTED

All of the above stated claims and causes of action arise from and form part of the same case and controversy and Plaintiffs are entitled to and hereby request a jury trial as to each and every cause of action or claim asserted herein.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment as follows:

A. Actual damages in excess of one million dollars ($1,000,000.00);

B. All compensatory damages, including, but not limited to emotional distress, mental anguish and damage to reputation; Punitive or exemplary damages;

D. A special master to investigate the gross abuses of power and concerning actions mentioned herein, and consideration of presentation of such abuses to the legislature for consideration of impeachment of Defendants Hesse, Henderson, and Andrews.

E. Declaratory relief regarding the unlawfulness of Defendants' actions, and immediate and prospective injunctive relief as appropriate; injunctive relief against Defendants for violation of Plaintiffs' civil rights

F. Attorney fees, costs and such relief as the Court deems reasonable and proper

Respectfully submitted,

ALEXANDER L. BEDNAR on his behalf and
as parent and Guardian of MFB, a minor
15721 Via Bella,
Edmond, Oklahoma 73012
(405) 420 9030
bednarconsult@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this ___19th___ day of   August___, 2019_, a true and correct copy of the foregoing pleading was forwarded by (email ) to Alex Bednar   and his attorney at the address of bednarconsult@gmail.com and stephenaharry@sahlawoffice.com

_____

Alberta Rose Josephine Jones, Pro Se

August 19, 2019

1